UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
IRSHAD RAMZAN,

                    Petitioner,          **MEMORANDUM &**
                                             **ORDER**

     - against -

                                     11 Civ. 1191 (NRB)
UNITED STATES OF AMERICA,        06 Cr. 456 (NRB)

                    Respondent.
-------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## <u>Introduction</u>

       Petitioner Irshad Ramzan, currently an inmate at the Moshannon Valley Correctional Center, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Ramzan challenges a sentence entered by this Court on June 1, 2010, following his guilty pleas to charges of conspiracy to commit mail and bank fraud in violation of 18 U.S.C. § 1349. In his petition, Ramzan asserts myriad claims, most notably that he was deprived of his constitutional right to effective assistance of counsel in the negotiation and execution of his plea agreements. For the reasons stated below, Ramzan's petition is denied.

## Background[1]

The history of this case is unusual. By Indictment of May 31, 2006, Ramzan and two co-defendants were charged with conspiracy to commit mail and bank fraud in violation of 18 U.S.C. § 1349. (Resp. Ex. A.) The Indictment charged the three individuals with participation in a conspiracy termed the "Bailout Scheme," in which the defendants conspired to defraud mortgage lenders by arranging for "straw purchasers" to receive loans from the lenders under false pretenses. (Id. ¶ 6.) Ramzan pleaded guilty to the Indictment on October 30, 2007, pursuant to a plea agreement (the "First Plea Agreement"). (Resp. Ex. B.) The stipulated guidelines range under the First Plea Agreement was 87 to 108 months. (Id. at 10:11-14.)

After entering into the First Plea Agreement, Ramzan attempted to provide substantial assistance to the Government, but this effort ultimately proved unfruitful. (Resp. Ex. E at 2:15-3:2.) Contemporaneous to Ramzan's efforts to cooperate, the Government was investigating other criminal activity in which Ramzan was involved. (Id. at 3:3-5.) As a result of information learned through this investigation, the Government filed a Superseding Information against Ramzan on August 5, 2009. (Resp.

---

[1] The facts set forth in this section are derived from Ramzan's Memorandum of Law in Support of Motion to Vacate, Set Aside, and, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by a Person in Federal Custody ("Pet. Mem."), filed February 14, 2011, and the Answer of the United States of America in Response to Motion Pursuant to 28 U.S.C. § 2255, filed April 15, 2011, and the exhibits annexed thereto ("Resp. Ex.").

Ex. C.) The Superseding Information contained a new charge of conspiracy to commit bank fraud in connection with conduct separate from that underlying the original Indictment. (Id.) This new conduct, referred to as the "Stolen Payoff Money Scheme," involved stealing funds in residential real estate transactions that should have been distributed to the lender holding the seller's mortgage. (Id. ¶¶ 4-5.)

Ramzan pleaded guilty to the Superseding Information on the same day it was filed, pursuant to a second plea agreement that expressly superseded the first agreement (the "Second Plea Agreement"). (Resp. Ex. E at 3:13-15.) Despite the inclusion of an additional charge in relation to the Stolen Payoff Money Scheme, the Second Plea Agreement contained a stipulated guidelines range identical to that in the First Plea Agreement – 87 to 108 months. (Resp. Ex. D. at 5.) To reflect Ramzan's efforts to cooperate, the Second Plea Agreement, unlike the First Plea Agreement, granted Ramzan the opportunity to argue for a sentence outside of the stipulated guidelines range. (Resp. Ex. E at 2:20-3:8.) The Second Plea Agreement also contained a provision under which Ramzan expressly waived his right to file a direct appeal or litigate under 28 U.S.C. §§

2255 or 2241 if his sentence was within or below the stipulated range.[2] (Resp. Ex. D at 6.)

Several aspects of the calculation of Ramzan's guidelines range under the Second Plea Agreement are relevant to the instant appeal. In entering the plea, the parties agreed that the criminal activity charged in the Indictment and in the Superseding Information would form one group for sentencing purposes, pursuant to U.S.S.G. § 3D1.2. (Id. at 3.) Ramzan also agreed to accept: (1) an eighteen-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(J) for having caused between $2,500,000 and $7,000,000 of loss; (2) a two-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(14)(A) (currently codified at U.S.S.G. § 2B1.1(b)(15)(A)) for having derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense; and (3) a four-level sentencing enhancement pursuant to U.S.S.G. § 3B1.1(a) for having been an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. (Id. at 4.)

Following Ramzan's second plea, but prior to his sentencing, Ramzan replaced the counsel who had negotiated both plea agreements, Leonard Ressler, Esq., with two new attorneys. Also in the time prior to his sentencing, Ramzan was asked by

---

[2] The First Plea Agreement contained an identical waiver. (Resp. Ex. B at 11:15-18.)

the Probation Office to complete a questionnaire regarding his financial status. Ramzan, however, failed to provide this information despite repeated requests. (Resp. Ex. F at 26:9-30:2.) Finally, as discussed at length during Ramzan's sentencing, there is evidence that following his initial plea, Ramzan engaged in further criminal behavior similar to that to which he had pleaded guilty. (Id. at 30:3-34:23.) Ramzan apparently offered to help two individuals restructure their mortgages, charged them for this assistance, and then failed to provide any services in exchange for his fees. (Id.)

Ramzan was sentenced on June 1, 2010. Because of his failure to provide the financial information requested by the Probation Office, as well as his apparent ongoing criminal activity, the Court determined that Ramzan was not eligible for a three-point reduction in his offense level for acceptance of responsibility. (Resp. Ex. F at 38:21-39:7, 39:25-40:4.) The Court also determined that Ramzan's criminal history level had been miscalculated under the Second Plea Agreement, concluding that the appropriate Criminal History Category was III rather than II.[3] Based on these adjustments, the Court concluded that

---

[3] As found in the Presentence Report, the stipulated guidelines range had not properly accounted for Ramzan's 2003 state court conviction and sentence for grand larceny. (Resp. Ex. F at 13:16-15:11, 20:7-22:7, 24:7-17, 47:14-21.) At sentencing, the Court rejected Ramzan's argument that his prior conviction was part of the same course of conduct as the schemes for which he was then being sentenced, and the Court noted that it is particularly significant that Ramzan committed the crimes in question while subject to a conditional discharge pursuant to his grand larceny sentence. (Resp. Ex. F at 25:17-24.)

the applicable guidelines range was 135 to 168 months. (Id. at 39:16-40:4.)

Notwithstanding this elevated guidelines range, the Court sentenced Ramzan to eighty-four months of imprisonment and four years of supervised release.[4] (Resp. Ex. F at 55:12-56:18.) Ramzan was thus sentenced to three months below the low end of the stipulated guidelines range.

On February 14, 2011, Ramzan filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. In light of Ramzan's claims concerning the effectiveness of Mr. Ressler - his counsel at the time of the two plea agreements - the Court entered an Order on July 17, 2012, requiring that Ressler submit an affidavit addressing the relevant aspects of Ramzan's claims.[5] (Docket No. 9.)  Ressler filed the requested affidavit on July 26, 2012. (Aff. of Leonard I. Ressler ("Ressler Aff."), filed July 26, 2012, Docket No. 11.)

## Discussion

A prisoner in federal custody may file a motion for a writ of habeas corpus on the ground that his sentence was imposed in violation of the Constitution or federal laws, was issued by a

---

[4] The Court also ordered Ramzan to forfeit several properties as agreed to in the Second Plea Agreement and to pay restitution as set out in the Government's third supplemental sentencing memorandum. (Resp. Ex. F at 55:18-56:7.)

[5] Specifically, the Court required that Ressler submit an affidavit addressing whether he "explained the terms and nature of the plea agreements to petitioner." (Docket No. 9.)

court that did not have jurisdiction, was in excess of the lawful maximum, "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). This form of collateral attack is therefore generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

## I. Waiver of Right to File Habeas Petition

The Government notes that Ramzan explicitly waived his right to file a petition under 28 U.S.C. § 2255 in the Second Plea Agreement. The Government thus contends that the majority of the claims advanced by Ramzan in his petition are barred as a threshold matter.

### A. Preclusive Effect

It is well established that, as a general matter, "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced." United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) (internal quotation marks omitted). "[I]f they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." Id. (internal quotation marks omitted); see also United States v. Morgan, 406 F.3d 135, 137

(2d Cir. 2005) (noting that "[i]f either party were able to secure its benefits while making its obligations contingent, the utility of plea agreements would disappear"); <u>United States v. Djelevic</u>, 161 F.3d 104, 106-07 (2d Cir. 1998) (collecting cases).[6]

Notwithstanding this broad principle, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver was procured. <u>Frederick v. Warden, Lewisburg Corr. Facility</u>, 308 F.3d 192, 195-96 (2d Cir. 2002). The Sixth Amendment right to effective assistance of counsel applies at all "critical" stages of criminal proceedings, including plea negotiations. <u>See, e.g.</u>, <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1385 (2012); <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1407 (2012) ("The reality is that . . . defense counsel have responsibilities in the plea bargain process . . . that must be met to render the adequate assistance of counsel . . . ."). Thus, "a waiver of collateral attack rights in a plea agreement is unenforceable where the petitioner claims ineffective assistance of counsel in connection with the plea agreement itself." <u>Muniz v. United States</u>, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005).

---

[6] While some of these sources refer only to appellate rights, we adopt the position taken in <u>Rosa v. United States</u>, 170 F. Supp. 2d 388, 397 (S.D.N.Y. 2001), that "there is no 'principled means of distinguishing [a Section 2255] waiver from the waiver of a right to appeal.'" (quoting <u>United States v. Wilkes</u>, 20 F.3d 651, 652 (5th Cir. 1994)).

B. **Application**

The record reveals that Ramzan's waiver of appellate and collateral attack rights was knowing and voluntary. The Second Plea Agreement specifically stated that "the defendant will not file a direct appeal, nor litigate under 28 U.S.C. §§ 2255 and/or 2241, any sentence within or below the Stipulated Guidelines Range of 87 to 108 months set forth above." (Resp. Ex. D at 6.) Ramzan's allocution makes clear that he understood that he had waived his right to challenge his sentence as a result of this provision:

> The Court: Do you also understand that you have agreed that a sentence between 87 and 108 months is, as a matter of law, a reasonable sentence, and that if that is the sentence that you get, or if you get a sentence lower than that, that you cannot appeal your sentence or otherwise challenge your sentence?
>
> The Defendant: Yes.

(Resp. Ex. E at 14:16-22.)

Ramzan further allocuted that he had sufficient time to discuss his plea with defense counsel and was satisfied with the advice and counsel given by his attorney. (Id. at 6:15-20.) This Court advised Ramzan of the charges and penalties he faced, and Ramzan repeatedly stated that he understood the consequences of his plea agreement and wished to plead guilty in accordance with its terms.[7] (Id. at 7:17-21:8.) The Court found that Ramzan

---

[7] Ramzan had made similar statements in the context of the First Plea Agreement. (Resp. Ex. B at 3:3-9, 9:5-10:3, 10:11-12:13, 19:12-20:3.)

understood the nature of the charges against him and the consequences of his plea, and that the plea was made voluntarily, knowingly, and with an adequate basis in fact. (Id. at 21:12-16.)

Consequently, when the Court sentenced Ramzan to a prison term of eighty-four months - below the stipulated guidelines range - Ramzan obtained the benefit of his bargain and is thereby bound by the waiver contained in the Second Plea Agreement. Despite the general prohibition thereby imposed on Ramzan against challenging his sentence, as discussed above, Ramzan may still attack the effectiveness of his counsel during the plea negotiation process. The Court will therefore focus its analysis on Ramzan's claims of ineffective assistance of counsel. In so doing, however, we remain mindful that "[a] claim of ineffective assistance of counsel is not a vehicle for a criminal defendant to attempt an end-run around a knowing and voluntary waiver of his right to appeal his sentence." Santiago-Diaz v. United States, 299 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) (citing Djelevic, 161 F.3d at 107).

## II.  Effectiveness of Counsel in Entering Plea Agreements

Claims of ineffective assistance of counsel in relation to a plea agreement are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Hill v. Lockhart, 474 U.S. 52, 58 (1985). Under this framework, a

claimant must establish: (1) that the counsel's representation fell below "an objective standard of reasonableness," and (2) that the allegedly ineffective assistance resulted in prejudice. Strickland, 466 U.S. at 687-88, 691-92.

To satisfy the "performance" prong, a claimant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quoting Strickland, 466 U.S. at 689). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56 (internal quotation marks omitted).

To satisfy the prejudice prong, the defendant must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Raysor, 647 F.3d at 495 (quoting Strickland, 466 U.S. at 694). In the context of a guilty plea, "the defendant must prove that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Gunn, 419 F. App'x 106, 109 (2d Cir. 2011) (quoting Hill, 474 U.S. at 59). A court may reject a claim of ineffective assistance of counsel for failure

11

to satisfy either prong of this framework, without reaching discussion of the other. Strickland, 466 U.S. at 697.

In considering an ineffective assistance of counsel claim made by a petitioner in federal custody, the district court has discretion to determine whether an evidentiary hearing is required. See 28 U.S.C. § 2255(b) (providing that a hearing must be conducted "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Although summary dismissal of Section 2255 claims is discouraged when those claims implicate "off-the-record interactions with . . . trial counsel," in such circumstances, district courts are often permitted to take a "middle road" and resolve the motion by supplementing the record with letters, documentary evidence, or affidavits. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001). This intermediate step "avoids the delay, the needless expenditure of judicial resources, and the burden on trial counsel and the government" that may be associated with a full-fledged evidentiary hearing. Puglisi v. United States, 586 F.3d 209, 215 (2d Cir. 2009) (internal alterations and quotation marks omitted). Thus, the middle road is particularly encouraged "in cases involving claims that can be, and are often, made in any case." Id. (internal alteration and quotation marks omitted). Ultimately, the district court must exercise its discretion to conclude

12

whether, in light of the amassed record, a hearing would "offer any reasonable chance of altering its view of the facts." Chang, 250 F.3d at 86.

**A.  Counsel's Advice to Accept Plea Offers**

Ramzan makes an overarching allegation that his counsel at the time of the plea proceedings was ineffective because he wrongly advised Ramzan to agree to the pleas.

The "highly deferential" standard developed in Strickland for evaluating whether counsel's performance was sufficient extends to a lawyer's selection of defense strategy from an array of available options. Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (citing Strickland, 466 U.S. at 688-91); see also United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991) ("While [defendant] may not be pleased with the strategy employed by his trial attorney, that alone is insufficient to establish his attorney's ineffectiveness."). The Supreme Court has recently noted that it is particularly difficult to define the duties of defense counsel in the plea-bargaining process, as "[t]he art of negotiation is at least as nuanced as the art of trial advocacy and . . . presents questions farther removed from immediate judicial supervision." Frye, 132 S. Ct. at 1408.

Ramzan acknowledges that his decision to accept the First Plea Agreement – which contained sentencing terms that were identical in substance to those contained in the Second Plea

Agreement – was part of a deliberate strategy endorsed by counsel to seek mitigation of his sentence through cooperation with the Government. (Response to Answer of the United States of America in Response to Motion Pursuant to 28 U.S.C. § 2255 ("Pet. Reply") at 3, 7.) Such a strategy is remarkably common and cannot possibly be considered to fall outside of the range of reasonable representation.[8]

Though this determination obviates the need for a discussion of prejudice, Ramzan's claim would fail on the second prong of Strickland as well. Ramzan's acceptance of the First Plea Agreement and subsequent efforts to cooperate with the Government resulted in improved terms in the Second Plea Agreement. Namely, the stipulated guidelines range remained unchanged in the Second Plea Agreement, but, unlike in the First Plea Agreement, Ramzan was granted the opportunity to argue for a sentence outside of that range. Rather than result in prejudice, counsel's advice proved to be to Ramzan's benefit.

In addition, it is difficult to see how Ramzan could establish prejudice given that he makes no claim in the instant petition that he would have pleaded not guilty and proceeded to trial but for counsel's advice. See Hill, 474 U.S. at 59.

---

[8] In fact, Ressler's affidavit credibly suggests that the strategy to cooperate, which led to the First Plea Agreement, was "at the behest of the petitioner who was desperate to avoid incarceration." (Ressler Aff. ¶ 11.)

Indeed, Ramzan concedes that he "admitted his guilt in open court because he is guilty." (Pet. Mem. at 11-12.)

## B.  Counsel's Explanation of Plea Terms

Ramzan vaguely alleges that his attorney did not sufficiently examine the facts contained in the plea agreements, discuss certain aspects of the agreements with him, or ensure that he understood their terms. (See, e.g., Pet. Mem. at 5-6 ("[C]ounsel failed to [e]nsure that [Ramzan] plea[d] guilty to a plea agreement which includes correct aspect of basic factual facts . . . .").)

Ramzan's claims in this regard are wholly conclusory and without any supporting details or facts. Moreover, the allegations directly contradict Ramzan's sworn statements at his plea allocutions that he had discussed the terms of the agreements with counsel and understood them in full. Such "[s]olemn statements in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Equally importantly, Ramzan's claims are credibly disputed by Ressler in his affidavit. Ressler asserts that Ramzan was provided his own copy of the First Plea Agreement to read and discuss with counsel and was fully apprised that by entering into the agreement, "he was waving his right to challenge the guidelines and to appeal his sentence so long as it was within the parameters of the plea agreement." (Ressler Aff. ¶ 13.) Ressler

further attests that Ramzan was fully apprised of the relevant guidelines in entering into the Second Plea Agreement. (Id. ¶ 19.)

Based on these considerations, as well as our "knowledge gained in the underlying criminal proceeding," we have little difficulty concluding that Ramzan's claims are not credible and therefore that Ramzan did not receive ineffective assistance with respect to counsel's understanding and communication of the plea agreements. See Puglisi, 586 F.3d at 214 (noting that, in considering whether a hearing is required on a Section 2255 claim, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding").

### C.  Organizer or Leadership Enhancement

Ramzan contends that defense counsel improperly advised him to accept a four-level enhancement in his guidelines calculation for having maintained a leadership role in his criminal activities.

Claims regarding alleged unfairness in the application of the Sentencing Guidelines will not be considered on a Section 2255 motion absent a showing of "a complete miscarriage of justice." See Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996). However, the question of whether an agreed-upon sentencing enhancement was warranted may bear upon a

16

determination of whether counsel's performance fell below an objective standard of reasonableness. See Hilario v. United States, 141 F.3d 1151, 1998 WL 59114, at *1-2 (2d Cir. 1998) (unpublished opinion); Muniz, 360 F. Supp. 2d at 579. As such, we will analyze the challenged enhancement to determine whether Ramzan's acquiescence to it was the product of ineffective assistance of counsel.

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Ramzan concedes that he meets these criteria with respect to the Bailout Scheme to which he initially pleaded guilty. However, he contends that he did not maintain an organizer or leader role with respect to the Stolen Payoff Money Scheme to which he pleaded guilty pursuant to the Superseding Information. He thus argues that he is not eligible for the sentencing enhancement because his leadership status applied to only some but not all of his criminal activities.

Even assuming, arguendo, that Ramzan was not a leader or organizer of the Stolen Payoff Money Scheme, the fact that Ramzan does not contest having assumed such a role in the initial Bailout Scheme renders his instant argument meritless. Consider that the First Plea Agreement concerned only that initial Bailout Scheme. Under Ramzan's theory, the inclusion of

17

an additional charge for the Stolen Payoff Money Scheme in the Second Plea Agreement would actually warrant a decrease in his guidelines range. This result would plainly defy common sense.

Simply put, Ramzan was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Because there was therefore "adequate factual support for the enhancement," counsel's advice to accept plea agreements incorporating the enhancement was neither deficient nor prejudicial. See Muniz, 360 F. Supp. 2d at 579.

### D.  Double Jeopardy Claim

Ramzan claims that the sentence imposed violates the Fifth Amendment's protections against double jeopardy, and that counsel's failure to object to the sentence on Fifth Amendment grounds constitutes ineffective assistance. Specifically, Ramzan claims that the two-level enhancement to which he stipulated under U.S.S.G. § 2B1.1(b)(14)(A) (currently codified at U.S.S.G. § 2B1.1(b)(15)(A)), for having "derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense," cannot be applied since the amount of financial loss caused by the offense also increased his sentencing range pursuant to U.S.S.G. § 2B1.1(b)(1)(J). The latter provision provides that when the amount of loss caused by an offense is between $2,500,000 and $7,000,000, the offense

18

level should be increased by eighteen levels. U.S.S.G. § 2B1.1(b)(1)(J).

The Second Circuit has expressly rejected Ramzan's argument. It has ruled that "the cumulation of the dollar amount enhancement [currently codified at U.S.S.G. § 2B1.1(b)(1)] and the financial institution enhancement [currently codified at U.S.S.G. § 2B1.1(b)(15)(A)] do not constitute impermissible double-counting because the two enhancements serve different purposes." United States v. Kilkenny, 493 F.3d 122, 131 (2d Cir. 2007) (citing United States v. Lauersen, 348 F.3d 329, 343 (2d Cir. 2003), vacated on other grounds by 543 U.S. 1097 (2005)).

As Ramzan's counsel therefore did not advise him to stipulate to terms that were in contravention of the Fifth Amendment, counsel's performance in this regard was plainly not deficient or prejudicial.

**E.  Summary**

Given the nature of Ramzan's claims, the record of the prior proceedings, and the supplemental affidavit submitted by Ramzan's former counsel, we find no possibility that Ramzan could demonstrate that he received ineffective assistance of counsel in the negotiation and execution of the two plea agreements. Because a hearing "would not offer any reasonable chance of altering [our] view of the facts," Chang, 250 F.3d at

86, we deny Ramzan's claims without the need for an evidentiary hearing.

## III. **Remaining Claims**

Ramzan brings an assortment of claims relating to the effectiveness of his counsel at sentencing, findings of the Court at sentencing, and various aspects of the ultimate sentence imposed.

However, having found that the Second Plea Agreement was entered by Ramzan knowingly, voluntarily, and with the effective assistance of counsel, the waiver contained therein precludes Ramzan from challenging those events that occurred subsequent to his plea.[9] See Hernandez, 242 F.3d at 114 (holding that if the constitutionality of the process by which a plea agreement was consummated "passes muster," an appeal waiver bars consideration of all issues that fall within its scope, including "any issues

---

[9] Even if Ramzan were not precluded from bringing these claims, we would find them all to be without merit. For instance, Ramzan claims that his counsel at sentencing was ineffective in failing to request a downward departure, but counsel at sentencing strenuously contested the various aspects of the guidelines calculation that Ramzan now challenges. (Resp. Ex. F at 6:1-9:22, 13:16-20:6, 23:25-24:21, 27:5-31:1, 33:5-34:19, 35:25-39:13, 40:7-47:8.) Thus, sentencing counsel's representation was more than adequate and, given that the Court did impose a sentence below the guidelines range, was certainly not prejudicial. Ramzan also contends that the Court failed to make adequate findings in calculating the applicable guidelines range, but such a claim is, as a general matter, not cognizable upon habeas review. See Graziano, 83 F.3d at 590. Finally, Ramzan contends that he received a sentence disproportionate to that received by other members of the conspiracies in which he participated. This claim ignores the varying degrees of culpability that may exist among different members of a conspiracy, as well as the numerous other factors that the Court considers in exercising its discretion upon sentencing. See United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008). The claim is also curious in light of the fact that the Court sentenced Ramzan to a term of imprisonment well below his applicable guidelines range.

about [the defendant's] sentence"); <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 509 (2d Cir. 2001) (holding that a defendant's waiver in a plea agreement "applies to grounds that arise after, as well as before, he made the waiver"); <u>Rosa v. United States</u>, 170 F. Supp. 2d 388, 406 (S.D.N.Y. 2001) (holding that the defendant's sentencing-related claims, including a claim of ineffective assistance of sentencing counsel, were barred by a valid waiver); <u>Robles v. United States</u>, Nos. 08 Civ. 4387 (DAB), 03 Cr. 1335 (DAB), 2009 WL 2634766, at *3 (S.D.N.Y. Aug. 26, 2009) (same).

## Conclusion

For the foregoing reasons, Ramzan's petition for a writ of habeas corpus is denied without the need for a hearing. As Ramzan has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:   New York, New York
         August 6, 2012

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Petitioner:**
Irshad Ramzan
Reg. No. 58882-054
Moshannon Valley Correctional Center
MVCC Unit B-1
555 I Geo Drive
Philipsburg, PA 16866

**Attorney for the Government:**
Daniel W. Levy, Esq.
U.S. Attorney's Office
One St. Andrew's Plaza
New York, NY 10007